**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL SCHULZ, on behalf of Plaintiff and the class members described herein, | ) |
| Plaintiff, | ) |
| v. | ) |
| CAROLYN STALK, doing business as Dash of Cash, Rapital Capital, Uncle Warbucks, Money Messiah, CONSTANTINE RADIOTIS; FINSANA, LLC; NCR FINANCIAL SERVICES, INC.; FIRST NATIONS LENDERS AUTHORITY; and JOHN DOES 1-20, | ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

1. Plaintiff, Michael Schulz, brings this action against Defendants (1) Carolyn Stalk, doing business as Dash of Cash, Rapital Capital, Uncle Warbucks, and Money Messiah, (2) First Nations Lenders Authority, (3) Constantine Radiotis, (4) NCR Financial Services, Inc., (5) Finsana, LLC, and (6) John Does 1-20 (collectively, "Defendants"), to secure redress for usurious and illegal loans (such as Exhibit A) made to Illinois residents.

2. Plaintiff seeks a declaratory judgment that the loans are void (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq*. and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*. (Count III—the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act).

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) (Class Action Fairness Act), and 28 U.S.C. § 1367 (supplemental jurisdiction).

4. On information and belief, there are more than 100 class members and the amount in controversy, on a classwide basis, exceeds $5 million, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendants because they:

a. Knowingly participated in the making and collection of unlawful loans to Indiana residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures,* 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b. Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

6. Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Indiana.

7. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92

Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

8. Plaintiff Michael Schulz is a citizen of Illinois and a resident of Chicago, Illinois.

9. Defendant Carolyn Stalk is an individual who uses the address of 1329 RD Arena Kahnawake (Quebec), J0L1B0 Canada. She does business as Dash of Cash, Rapital Capital, Uncle Warbucks, Money Messiah, and Speedy Servicing. (Exhibit B)

10. Defendant First Nations Lenders Authority is or was until recently an entity which used the address of 1 Patton Road, P.O. Box 2012, Mohawk Territory of Kahnawake, Quebec, J0L 1B0, Canada.

11. Defendant Stalk purportedly made loans via the Internet using a number of websites, including https://www.dashofcash.com/. (Exhibit C)

12. The websites include https://www.dashofcash.com/ and the following others:

a. www.rapitalcapital.com (Exhibit D);

b. www.unclewarbucks.com (Exhibit E);

c. www.moneymessiah.com (Exhibit F);

13. Defendant NCR Financial Services, Inc. is a corporation organized under the law of Delaware with a principal place of business of 4480 ch. de la Cote-de-Liesse, Suite 355, Mont-Royal, Quebec, H4N 2R1, Canada. Its registered agent and office is Corpomax, Inc., 2915 Ogletown Road, Newark, Delaware 19713.

14. Defendant Constantine Radiotis, also known as Constantinos Radiotis, is the president, secretary, and treasurer of NCR Financial Services, Inc., as well as its Director of Operations. He may be found at 4480 Chemin de la Côte-de-Liesse Suite 355, Mount Royal, Quebec, H4N 2R1, Canada.

15. Defendant Finsana, LLC is a limited liability company organized under Delaware

law with a principal place of business of 4480 ch. de la Cote-de-Liesse, Suite 355, Mont-Royal, Quebec, H4N 2R1, Canada. Its registered agent and office is Corpomax, Inc., 2915 Ogletown Road, Newark, Delaware 19713.

16. Finsana, LLC describes itself as an "emerging global lender that specializes in catering to underserved and underbanked consumers since 2006."

17. Defendant Radiotis is the founder and chairman of Finsana, LLC.

18. The lending operations conducted via the FNLA Websites were in fact conducted by Defendants Radiotis, NCR Financial Services, Inc., and Finsana, LLC.

19. Radiotis has significant experience in online payday lending. He operates numerous lenders purportedly affiliated with American Indian tribes, several operating with legitimate state licenses from Utah or Missouri, and some outside of the United States.

20. Defendants John Does 1-20 are other natural or artificial persons who participated in the Internet lending scheme complained of herein.

**LENDING SCHEME**

21. Defendants made loans to residents of Illinois via the Internet. Funds were disbursed by means of ACH transfers to the borrowers' respective bank accounts in Illinois. Repayment was made via ACH transfers from the borrowers' respective bank accounts in Illinois.

22. The interest rates on the loans were many times the maximum permitted in Illinois.

23. To cover up and conceal the illegal lending activities, Defendants had the loans made using trade names registered in the province of Quebec, Canada. (Exhibit B)

24. The websites and loan documents recited that each lender was a "Mohawk or First Nations entity" located within the Mohawk Community of Kahnawake, which is a federally recognized First Nations entity and enjoys sovereign immunity, under the auspices of the FNLA.

25. This is not true.

26. The Mohawk Council of Kahnawake never authorized the lending activities in

question. (Exhibit G)

27. Defendant Stalk is either a Native American (referred to as First Nations in Canada) or lives on or near a reservation. She and several other persons were used to provide purported Native American cover for the lending operation, which was in fact operated by NCR Financial Services, Inc. and Finsana, LLC at the direction of Radiotis.

28. FNLA was created in order to further the Native American cover, by purporting to be a regulatory authority regulating the making of loans from Native American reservations in Quebec. In fact, it had no authority to do so. (Exhibit G)

29. The FNLA allowed anyone to apply for certification, charging US (not Canadian) $20,000 per year for a lender to become a "General Member," US$7,500 per year to become an "Affiliate Member" (e.g., companies which "assist" licensed lenders), and US$5,000 for "approved vendors."

30. The FNLA was nothing more than a front created by NCR Financial Services, Inc., Finsana, LLC, and their owners and investors, to convince the public that the FNLA is a "real" governing body and, somehow, has authority to regulate lending and interest rates between lenders in Mohawk territory and consumers in the United States.

31. Prior to about April 2025, the FNLA Websites purportedly operated as "subsidiary agencies" of the FNLA.

32. The FNLA in turn claimed to operate pursuant to a Charter of The First Nation Lenders' Authority (the "Charter") granted by the Mohawks of Kahnawake, which Charter supposedly granted the authority to regulate "short-term lending service businesses within First Nations Territories."

33. The FNLA then granted licenses to each of the FNLA Websites which licenses were available via a link on each website so that any consumer accessing the website would believe the lender to be legitimately licensed by the Mohawks of Kahnawake.

34. However, no such charter was ever recognized by the Council, or any other

legitimate governing authority. (Exhibit G)

35. Defendants' loan agreements contain a choice-of-law provision indicating the laws of the Mohawk govern. There is no such law. (Exhibit G)

36. Under Canadian federal law, a loan with an interest rate greater than 60% per annum is a criminal offense, with no exception for loans made by persons claiming affiliation with a First Nation. (Section 347 of the Criminal Code of Canada)

## PLAINTIFF'S TRANSACTION

37. Plaintiff obtained a $1,000 loan via www.dashofcash.com on May 22, 2025, at a disclosed annual percentage rate of 430%.

38. The loan was made for personal purposes and not for business purposes.

39. The principal amount was transferred to Plaintiff's bank account in Illinois via ACH.

40. Repayments were to be made from Plaintiff's bank account in Illinois via ACH.

41. Loans to Illinois residents made in the same manner as the loan to Plaintiff are governed by the laws of the State of Illinois.

42. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

43. The excessive interest charges imposed by Defendants were intentional.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

44. Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and

void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

45. Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

46. Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

47. Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Installment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

48. Loans made by an unlicensed lender to an Illinois resident at an interest rate exceeding 9% violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

49. Illinois' criminal usury statute provides that the making of a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of

another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

50. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

51. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *See, e.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569); *In the Matter of Money Mutual, LLC*, No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

52. The excessive interest charges imposed by Defendants were willful.

**COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT**

53. Plaintiff incorporates paragraphs 1-52.

54. This claim is against all Defendants.

55. There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff and the class members must repay the loans made to them.

56. Declaratory relief will resolve such controversy.

57. An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

58. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

59. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via the websites www.dashofcash.com, www.rapitalcapital.com, www.unclewarbucks.com, or www.moneymessiah.com, at more than 9% interest (c) which loan has not been paid in full.

60. Plaintiff may alter the class definition to conform to developments in the case and discovery.

61. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

62. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

63. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

64. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

65. Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

66. The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Injunctive relief;

ii. Declaratory relief;

iii. Restitution of all amounts collected on the loans from members of the class;

iv. Costs of suit; and

v. Such other and further relief as the Court deems proper.

**COUNT II – ILLINOIS INTEREST ACT**

67. Plaintiff incorporates paragraphs 1-52.

68. This claim is against all Defendants.

69. Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

70. Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

**CLASS ALLEGATIONS**

71. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

72. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via the websites www.dashofcash.com, www.rapitalcapital.com, www.unclewarbucks.com, or www.moneymessiah.com, at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

73. Plaintiff may alter the class definition to conform to developments in the case and discovery.

74. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

75. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

76. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

77. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

78. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible; and

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Damages as provided in 815 ILCS 205/6.

ii. Attorney's fees, litigation expenses, and costs of suit; and

iii. Such other and further relief as the Court deems proper.

**COUNT III – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT**

79. Plaintiff incorporates paragraphs 1-52.

80. This claim is against all Defendants.

81. Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

82. Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act. 815 ILCS 505/1 *et seq.*

**CLASS ALLEGATIONS**

83. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and

(b)(3).

84. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via the websites www.dashofcash.com, www.rapitalcapital.com, www.unclewarbucks.com, or www.moneymessiah.com, at more than 9% interest (c) on or after a date three years prior to the filing of this action.

85. Plaintiff may alter the class definition to conform to developments in the case and discovery.

86. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

87. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

88. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

89. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

90. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible; and

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Compensatory damages;

ii. Punitive damages;

iii. Attorney's fees, litigation expenses, and costs of suit; and

iv. Such other and further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Dedelman@edcombs.com
tgoodwin@edcombs.com
Jclark@edcombs.com
ahuzyk@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, loan, sale or file associated with Plaintiff, and any account or loan or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

T:\41847\Pleading\Complaint_Pleading.wpd